IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN TROY and NANCY ORR,   )
             Plaintiffs,   )
                     )
     vs.                )     Civil Action No. 11-1509
                     )
STATE CORRECTIONAL      )
INSTITUTE - PITTSBURGH,    )
             Defendant.   )

## REPORT AND RECOMMENDATION

**REPORT**

### I. INTRODUCTION

Currently pending before the Court is Defendant's, State Correctional Institute – Pittsburgh's, Motion for Summary Judgment [ECF No. 25]. For the reasons that follow, it is respectfully recommended that Defendant's Motion be granted in part and denied in part.

### II. BACKGROUND

Plaintiffs, Kathleen Troy and Nancy Orr, were employed by State Correctional Institute-Pittsburgh ("SCI Pittsburgh"). Plaintiffs claim that they were constructively discharged by SCI Pittsburgh and allege a hostile work environment claim for: (1) a violation of 42 U.S.C. § 2000e-1, *et seq.* for a policy or practice of discrimination against Plaintiffs based on their sex in violation of Title VII; and (2) a violation of 42 U.S.C. §2000e-3(a) for retaliation under Title VII. Generally, Plaintiffs allege that their male supervisors, Melvin Lockett ("Lockett") and Martin Kovacs ("Kovacs") engaged in a practice of discrimination against them. Lockett was the Corrections Superintendent 2 of SCI Pittsburgh, and Kovacs was the Deputy Corrections Superintendent 2 and Deputy Superintendent for Facilities Management. Lockett, as Superintendent, had responsibility over every employee at the jail. Pls.' Resp. to Def.'s

1

Statement of Material Facts [ECF No. 31] at ¶ 54. In Lockett's absence, Deputies Kovacs or Janis Niemiec would assume the role of "acting" superintendent of the jail.[1] *Id.* at ¶ 55. In his position as a deputy, Kovacs did not have any oversight of the HR Department and the HR Department reported directly to the superintendent. Kovacs Dep. [ECF No. 28-2] at 25-26.

a. Kathleen Troy[2]

Plaintiff Kathleen Troy was a female employee of SCI Pittsburgh with more than seventeen-years of experience with the Department of Corrections ("DOC"). Compl. [ECF No. 1] at ¶ 44; Pl.'s Statement of Material Facts [ECF No. 31] at ¶ 50. At the time of her alleged constructive discharge, she held the position of HR Analyst II. *Id.* Plaintiff Nancy Orr was Troy's direct supervisor, until Orr took administrative leave in June 2011. Compl. [ECF No. 1] at ¶ 85. Troy's position as an HR Analyst II involved "coordinat[ing] staff development and [the] training office under the Human Resources Department [by] ensuring that employees receive the training required for their position by DOC policies and that employees receive such training as appropriate to develop their promotional capabilities." Def.'s Statement of Material Facts [ECF No. 27] at ¶ 1.

---

[1]     Although the role of "acting" superintendent invokes "supervisor liability" issues under *Vance v. Ball State University*, -- U.S. --, --, 133 S.Ct. 2434 (June 24, 2013), the Court finds that these issues need not be addressed because the Plaintiffs do not make a prima facie showing of discrimination.

[2]     It is initially noted that Plaintiffs advance the argument that they were discriminated against under Title VII because they "failed to adhere to female gender stereotypes." Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 6. Specifically, they allege because they did not engage in sexual relationships with the male employees, nor did they fraternize outside of work with the employees, they were treated differently than the other females in the workplace who engaged in such conduct. Plaintiffs cite no authority in support of their argument. To show an inference for gender discrimination, the plaintiff must demonstrate that others not in the protected class who are similarly situated, *i.e.*, males, were treated more favorably than their female counterparts. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 726 (3d Cir. 1988); *Houston v. Easton Area Sch. Dist.*, 355 Fed.App'x 651, 654 (3d Cir. 2009). For example, where an employee complained of race and gender discrimination, but pointed to comparators of multiple races and genders, the Court of Appeals for the Third Circuit found that plaintiff could not show race or gender discrimination. *Wilcher v. Postmaster Gen.*, 441 Fed.App'x 879, 882 (3d Cir. 2011) (not precedential). It is unclear, and Plaintiffs fail to explain, how the alleged favorable treatment of other women at SCI Pittsburgh supports a finding of sex discrimination. Congress has not indicated that chastity or licentiousness is a protected class. For this reason, their claim that other female employees were treated more favorably fails.

Troy alleges that in "late spring of 2010, a pattern of harassment and intimidation developed, and, in part, was directed at Troy that was instigated and/or promoted by" Kovacs. *Id*. at ¶¶ 12, 48. In support of her claim for discrimination, she alleges the following: her office was relocated twice; she was denied clerical assistance not denied to male employees who performed similar employment duties; she was required to perform increased job functions that when assigned to male employees were performed by multiple male employees; after she was relocated, she was denied access to her office to complete extant training functions; Kovacs and Lockett directed frequent confrontational and hostile behavior towards her not directed at male employees; when Troy returned to the Training Department, she was denied clerical assistance given to her male peers and was expected to manage a workload that was managed by three people during her transfer; and trainings were cancelled for the purpose of creating the impression that Troy could not effectively complete her job functions. *See* Compl. [ECF No. 1] at ¶ 50(h).

In May of 2010, Troy's office was moved from a room directly across the training facility to the other side of campus into the Medical Building and although she was told that her old office was needed for space for another department, her old office remained vacant during her remaining tenure at SCI Pittsburgh. Compl. at ¶ 49; Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 10. Troy alleges that the office relocation required her to transport large binders and other training materials across the campus to conduct trainings. Compl. [ECF No. 1] at ¶ 49.

In the summer of 2010, Troy assumed a temporary position with the HR Department and her office was moved temporarily to the HR Department. Compl. [ECF No. 1] at ¶ 50(e). While she held the temporary position in the HR Department, Troy was denied key-access to her

training office located in the Medical Building and all of her training-related materials were inaccessible to her.[3] *Id.*; Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 10. When Troy was denied access to her office, she contends that the other males and training sergeants were given access to the training office. She states that at this time, she was moved over to the HR Department, but "still had many training duties" to perform. Troy Dep. [ECF No. 28-1] at 33-34. Defendant argues that because Troy "was not working in the Training Department at the time, but instead, was temporarily working in the HR [Department], there was no need for her to have keys to the Training Department . . . because she was not working there. When Troy returned to the Training Coordinator position and her office in the Medical Building, she was issued the appropriate keys." Def.'s Br. in Supp. of Mot. for Summary Judgment [ECF No. 26] at 14-15.

When Troy returned to the Training Department, she was informed that she would no longer have the assistance of the Training Lieutenant James Lipscomb. Pls.' Statement of Material Facts [ECF No. 31] at ¶ 26. Defendant argues that they had to transfer Lipscomb to the segregation and mental health unit because of the lack of staffing and Lipscomb was the only person qualified to perform that job. Pls.' Statement of Material Facts [ECF No. 31] at ¶ 27.

In or around July 2010, Troy had scheduled a firearms training that was cancelled. Defendant claims that the training was scheduled at the same time that a pre-approved DOC softball tournament was scheduled and SCI-Pittsburgh would be short staffed at that time. Defendant alleges if the training was held, SCI-Pittsburgh would have had to pay officers overtime to attend. Def.'s Br. in Supp. of Mot. for Summary Judgment [ECF No. 26] at 13-14.

The following supports Troy's retaliation claim. In August 2010, Troy filed an internal

---

[3]       While Troy alleges she was denied "keys" to her old office, it is not clear from the record that she was denied complete security access to her office.

complaint against Lockett, Kovacs and another male employee alleging that they discriminated against her. Compl. [ECF No. 1] at ¶ 51. She claims that within a day of filing the internal complaint, Kovacs and/or Lockett requested an "unscheduled audit of Troy's department" when the yearly audit was not to be completed until February 2011. *Id*. at ¶ 53. Troy filed a formal complaint with the federal EEOC in or about September 2010. In November 2010, two months after she filed her formal complaint, she was given an Employee Performance Review in which she was given a rating of "outstanding" or "commendable" for each employment factor assessed, and given an overall rating of "outstanding." *Id.* at ¶ 55(a). Lockett disagreed with the rater's evaluation of Troy and included in a written section of the Employee Performance Review that Troy should have received a "satisfactory" overall rating because she had failed an audit and "was reluctant to assist work staff." *Id*. Troy claims that the audit was failed for reasons outside of her control, and the failed audit was retaliation for her filing the EEOC complaint. *Id*. at ¶ 55(b). In December 2010, after a piece of audio visual equipment under Troy's control went missing, Kovacs made her fill out an inventory report "which did not relate to her department and which no other similarly-situated departments were required to submit[.]" *Id*. at ¶ 55(c). Troy also claims in January 2011 she was denied additional work hours when it was approved for other employees. Troy further claims that after Orr left SCI Pittsburgh, instead of being supervised by Orr's replacement, Lockett made Troy directly report to him. *Id.* at ¶ 55(e). Lastly, she claims that she was assigned increased duties but was not compensated at an increased rate compared to male employees who were compensated at increased rates for increased responsibilities. *Id*. at ¶ 55(h).

In response to Troy's claims, Defendant asserts that she has failed to establish a claim for retaliation. Defendant claims that Troy was a subpar employee and failed reviews. Def.'s Br. in

Supp. of Mot. for Summary Judgment [ECF No. 26] at 11. It claims that the audit was scheduled because there were training deficiencies in the department. *Id*. at 17-18. It denied Troy clerical assistance and increased her job functions were due to the fact that there was a high vacancy rate in the clerical department and SCI-Pittsburgh was chronically understaffed. *Id.* at 12-13. Moreover, Troy was closely monitored for the 2010/2011 year because SCI-Pittsburgh failed its training audit the previous year, and trainings were Troy's primary responsibility. *Id.* Further, Lockett disagreed with Troy's employee performance review because of her purported "abysmal performance in training." *Id*. at 18.

b. Nancy Orr

Plaintiff Orr had approximately twenty-six years of Human Resource experience with the Commonwealth of Pennsylvania. Pls.' Resp. to Def.'s Statement of Material Facts [ECF No. 31] at ¶ 49. She was hired at SCI-Pittsburgh in 2007 as a Field Human Resources Officer. *Id*. at ¶ 51. Orr supervised seven other individuals in her capacity as a Field Human Resource Officer, including Plaintiff Troy. Compl. [ECF No. 1] at ¶ 60. Orr's responsibilities included "recruitment and staffing; employee classification, compensation and benefits; labor relations (seven employee unions) including regular meetings with unions, handling grievances (including 430 grievances in 2010), and the handling of internal EEO complaints." *Id*. On or about December 24, 2009, "Orr was promoted to a Field Human Resource Officer 3 position at SCI-Pittsburgh, was assigned responsibility for HR oversight of the regional Community Corrections Centers in the Pittsburgh area and approximately 60 additional employees." *Id*. at ¶ 61.

The following supports Orr's claim for discrimination under Title VII. Orr claims that Lockett frequently berated and demeaned Orr in front of other supervisors at meetings, reducing her to tears, and did not treat other male supervisors similarly. Compl. [ECF No. 1] at ¶¶ 69-72.

Orr further claims that when a vacancy for a typist was approved for the HR Department, Lockett would not release candidates that Orr believed were qualified for the position, but only sent her candidates that were not qualified for the position. Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 8. She claims that other similarly situated male managers were given a typist. Orr claims that Lockett was to complete her review in June 2010, and did not complete the review until January 2011. *Id.* at 8-9. Orr remained on probationary status until July 2012. *Id.* at 9. Orr claims that Lockett timely completed male employees' annual reviews. *Id.* Orr also claims that Lockett condescendingly questioned Orr's ability to hear, and she has a documented hearing disability. Compl. [ECF No. 1] at ¶ 69.

Defendants argue that declining to review Orr's probationary status was an administrative oversight and Lockett approved the review as soon as he realized it was not completed. Def.'s Br. in Supp. of Mot. for Summary Judgment [ECF No. 26] at 16. Moreover, Defendant argues that the comment regarding the ability to hear was taken out of context because Lockett was questioning everyone in the room whether they had heard him to confirm that they understood his directive. *Id.* at 15. Lockett testified that he made the comment "for [his] edification as well as to see if I did say it, and I did." Def.'s Statement of Material Facts [ECF No. 27] at ¶ 33. Further, Defendants argue that the HR Department was not given a typist due to the staffing shortages and the employee that Orr wanted to fill the position was already working for the Security Department and was needed to perform confidential typing. Def.'s Br. in Supp. of Mot. for Summary Judgment [ECF No. 26] at 16.

In support of her retaliation claim, Orr asserts the following. In or about fall 2010, when Troy filed her federal EEOC complaint, Lockett circumvented the HR Department and attempted to answer the complaint himself, contrary to department policy. Compl. [ECF No. 1] at ¶ 78.

Further, when Orr filed an internal EEO complaint, it was not docketed until a month later after Orr was discouraged from filing the complaint. *Id.* at ¶¶ 79-82. She also claims that DOC policy was not followed for her internal EEO complaint because Lockett and Kovacs were notified of the internal complaint and assisted in obtaining witness statements to buttress their defense. Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 14-15. After she filed the internal complaint, she claims that she was left out of meetings and work was assigned to her administrative staff without her approval. Compl. [ECF No. 1] at ¶ 83.

### III. JURISDICTION

Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiffs advance claims under Title VII of the Civil Rights Act of 1964. Plaintiffs have also exhausted their administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), receiving a right-to-sue letter and initiating the instant action within ninety days. *See* Compl. [ECF No. 1] at ¶¶ 17-26.

### IV. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for

summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [for Plaintiffs] by clear and convincing evidence")).

## V. ANALYSIS

### a. Scope of Evidence

Throughout Plaintiffs' pleadings, they contend that other female employees of SCI Pittsburgh complained of a sexually hostile work environment, and this is evidence of Plaintiffs' own sexual harassment. *See* Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 3-4.

This professed "me too" evidence "is neither per se admissible nor per se inadmissible." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Whether such evidence is relevant for determining a plaintiff's alleged harassment "is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Mandel*, 706 F.3d at 167. Such evidence may be "relevant to prove intent or to prove whether an employer knew or should have known about [the] harassment." *Mandel v. M & Q Packaging Corp.*, 2011 WL 3031264, at *1 (M.D.Pa. Jul. 25, 2011) (reversed on other grounds). It is axiomatic, however, that evidence of prior bad acts are inadmissible "to prove the character of a person in order to show conformity therewith." Fed. R. Evid. § 404(3)(b).

Plaintiffs contend that on August 12, 2010, the same day that Troy filed an internal EEO complaint, a female captain, Pamela Teeter, also filed an internal complaint alleging sex

discrimination naming, among others, Lockett and Kovacs. *See* Pls.' Br. in Op. of Mot. for Summary Judgment [ECF No. 30] at 3-4. Plaintiffs fail to expand upon Teeter's claim and how it relates to their claims.[4] The Court cannot determine from this scant evidence whether Teeter's complaint is closely related to Plaintiffs' complaint. Furthermore, Plaintiffs offer this evidence to prove that SCI Pittsburgh acted in conformity with a character tendency to harass women, a purpose not permitted under Federal Rule of Evidence section 404(3)(b) and therefore, evidence of Teeter's allegations are inadmissible to prove Plaintiffs' allegations.

b. <u>Hostile Work Environment Sexual Harassment Claim</u>[5]

Title VII prohibits, *inter alia*, sexual discrimination in the workplace. A plaintiff may allege that the sexual harassment was either quid pro quo or that the harassment was "so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). "For an atmosphere of [sexual] harassment or hostility to be actionable, the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive environment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004). The Court of Appeals for the Third Circuit imposes five factors for a finding of a hostile work environment: (1) the plaintiff "suffered intentional discrimination because of [their] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [the

---

[4]     The only testimony explaining Teeter's internal complaint is from Lockett, who testified when asked about the nature of her complaint: "Captain Teeter may have anticipated that she was going to get a schedule change, but I don't believe she did. The EEO challenge that I was questioned about was that we were working on a project, an arbitration decision, and I left the facility and took three people with me outside the facility to discuss the issue, and Captain Teeter felt that she should have been informed. She should have been in the control center to be informed. I informed the next in command in the control center." Lockett Dep. [ECF No. 28-2] at 67-68.

[5]     Defendant argues that Plaintiffs have failed to establish a prima facie case for gender discrimination based on the office relocation and the hostile treatment towards Plaintiffs because they are not considered an adverse employment action. Defendant's assertion is misplaced and confuses Plaintiff's argument. Plaintiffs claim that they were constructively discharged and this constitutes their adverse employment action. *See Crooks v. Nat'l Oilwell Varco, L.P.*, 2013 WL 3894878 (M.D.Pa. Jul. 26, 2013).

plaintiff]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Trunzo v. Ass'n of Prop. Owners of the Hideout, Inc.*, 90 Fed.App'x 622, 625 (3d Cir. 2004) (citing *Andrews*, 895 F.2d at 1482). "Title VII does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). The strict standards for a finding of a hostile work environment ensure that Title VII does not become a "general civility code." *Faragher*, 524 U.S. at 788 (citations omitted).

"In order to defeat a motion for summary judgment, a plaintiff seeking to advance a hostile work environment claim must present some evidence indicating that the harassing conduct of which he or she complains can be traced to his or her statutorily-protected trait." *Hubbell v. World Kitchen, LLC*, 688 F.Supp.2d 401, 419 (W.D.Pa. 2010). The plaintiff does not need to show "direct evidence of the harasser's motivation or intent; intent to discriminate can be inferred from the record." *Crooks*, 2013 WL 3894878, at *6. Importantly, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion]' . . . because of . . . sex[.]'" *Id.* at *6 (quoting *Oncale*, 523 U.S. at 79-80). An employer's indiscriminate hostility is not actionable under Title VII. *Hubbell, LLC*, 688 F.Supp.2d at 419 (W.D.Pa. 2010). "[O]rdinary tribulations of the workplace" such as "sporadic use of abusive language" or "generally boorish behavior" does not constitute a hostile work environment. *Vance*, -- U.S. at --, 133 S.Ct. at 2455.

For example, in *Mandel*, the following conduct was determined to constitute a "hostile work environment":

> [B]eing referred to as "woman," "darling," "the woman," "fluffy," "missy," "hon," "toots,"; having her body, clothing, and physical appearance commented on; being told that she was "foolish not to use [her] assets"; being told by [a manager] . . . when she asked for directions to a meeting at corporate headquarters, that "[f]or you . . . the meeting will start at my house tonight and we will conclude our part of it tomorrow morning – maybe . . . we may need to postpone the meeting with everyone else a few hours to finish up . . ."; being told by [another manager] that he fantasized about her while he was having sex with his wife; being told in a review . . . that she was "too female" and "too emotional"; being solicited for dates [by a manager] . . . even after she told him she was not interested; being told to clean the bathroom and make coffee when male employees were not asked to perform such tasks; and being paid less and given less vacation time than a male manager[;] . . . [during a meeting being repeatedly called] a "bitch," and [was] screamed [at to] "shut the fuck up."

*Mandel*, 706 F.3d at 162.

In *Crooks* the following was found to constitute a sexually hostile working environment: The manager hit the back of plaintiff's desk chair with a whiffle ball bat which she was sitting in and told her that her "head was going to fucking roll if [she] didn't get her sales up[;]" told her to "shut the fuck up"; displayed images of nude women on a computer screen twice every other week for thirty to forty-five minutes and invited plaintiff to view them and she declined; forced plaintiff to tell him a sexually explicit story with the threat of being fired if it was not divulged; called her a "dumb fucking cunt" in front of other employees and continued to do so even though plaintiff told him it offended her; used the word "cunt" around male employees; after receiving a picture of his wife on his cell phone, he remarked to other employees that she was a "stupid fucking bitch" who looked "like a fucking whore" and stated that he might have to go home and "beat the shit out of her"; when plaintiff asked about a job promotion, her manager replied it would be a waste of time because she had "tits" and she would not get the position because "bros before hoes" *i.e.*, a male candidate would be chosen before a female candidate; when she was

speaking with a client, and the client told her that she needed to go to the back of his trailer so that he could perform oral sex on her, she reported it to the manager and he slammed his fist on his desk and asked plaintiff why she did not appease the client because they were trying to lock down the account. *Crooks*, 2013 WL 3894878, at \*1-\*3.

Finally, in *Brown-Baumbach v. B & B Auto.*, 437 Fed.App'x 129, 130 (3d Cir. 2011) (not precedential), the court found that plaintiff sufficiently alleged a sexually hostile work environment where after a four month tenure, a male co-worker joked that plaintiff had "creamed her pants" after she had spilled ice cream on herself; received a comment that she and a supervisor were "getting busy"; a supervisor had text messaged plaintiff's co-worker asking if plaintiff was wearing underwear; another supervisor suggested plaintiff had only worked for him because he "needed an attractive woman" at the location; a rumor was circulating that plaintiff and a co-worker were sleeping together; the owner of the company called plaintiff a "mother fucking bitch" and that she was saying "fucking nonsense" and told her to pack up her "fucking shit and leave" and to "get the fuck out of his office" and if any woman cried, to consider themselves automatically terminated; and another female co-worker would throw plaintiff's papers on the floor. *Id.* at 131-132.

While Plaintiffs offer no evidence of overt sex discrimination, "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim." *Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d Cir. 2001). Therefore, whether the facially neutral mistreatment constituted a hostile work environment must be determined. For example, in *Gazdick v. Solis*, 2013 WL 1909576, at \*18 (M.D.Pa. May 8, 2013), the court found that no

13

hostile work environment existed when, among other things, the plaintiff's supervisor "often cursed at and chastised Plaintiff in front of other employees, scrutinized his work more harshly than others, and gave him a minimally satisfactory job performance rating." *Id*. [M]istreatment that is not motivated by the plaintiff's protected class, but rather belief of insubordination does not create a hostile work environment." *Lucas v. City of Phila.*, 2013 WL 2156007, at *12 (E.D.Pa. May 17, 2013). Construing the facts in Plaintiffs' favor, the Court finds that Defendant's conduct does not give rise to a severe or hostile work environment.

### 1. Troy

Troy claims that her office was relocated twice; she was denied clerical assistance that similarly situated male employees were not denied; she was required to perform increased job functions that when assigned to male employees were performed by multiple male employees; Lockett interfered with the training schedules and challenged Troy's performance for not completing trainings; denied Troy access to her original office after being relocated; Lockett and Kovacs screamed at and was confrontational and hostile towards Troy; when Troy returned to the Training Department, she was denied clerical assistance given to her male peers and was expected to manage a workload that was managed by three people during her transfer; her department was audited and failed; Lockett disagreed with Troy's employee evaluation; Troy had to complete a tool inventory after losing a piece of equipment; Troy had to directly report to Lockett after Orr left; and Troy was assigned more duties without more pay.

Although Troy's office was relocated, the entire Training Department, including four male employees, was moved from the Administration Building into the Medical Building. Moreover, three other males were moved from the Administration Building. Troy claims that she did not receive clerical support when she was temporarily working in the HR Department

while the male employees in the training department had clerical assistance. Orr testified that there was a 17% vacancy rate at SCI-Pittsburgh and "there was a period of time they froze the clerical vacancies." Def.'s Statement of Material Facts [ECF No. 27] at ¶ 17; Orr Dep. [ECF No. 28-1] at 11.

When Troy returned to the Training Department, she was informed that she would no longer have the assistance of the Training Lieutenant James Lipscomb. Pls.' Resp. to Def.'s Statement of Material Facts [ECF No. 31] at ¶ 26. Defendant argues that they had to transfer Lipscomb to the segregation and mental health unit because of the lack of staffing and Lipscomb was the only person qualified to perform that job. Def.'s Statement of Material Facts [ECF No. 27] at ¶ 27.

In or around July 2010, Troy had scheduled a firearms training that was cancelled. Defendant claims that the training was scheduled at the same time that a pre-approved DOC softball tournament was scheduled and SCI-Pittsburgh would be short staffed at that time, and if the training was held, SCI-Pittsburgh would have had to pay officers overtime to attend. Def.'s Br. in Supp. of Mot. for Summary Judgment [ECF No. 26] at 13-14. As for denying Troy access to the office in the Training Department, Defendant argues that it did so because she was not in the Training Department at the time, but was working in the HR Department and key control is essential, especially in a secured employment environment such as a prison. *Id.* at 14.

Viewing all of the evidence together in the light most favorable to Troy, it does not support a finding of a hostile work environment. Troy complains of the ordinary tribulations of her workplace. Many of the issues that Troy complains of could certainly be attributed to the short staffing issues, and most tellingly, Troy offers no direct evidence that she was discriminated against because of her gender. Further, making Troy report directly to Lockett

instead of Orr's successor, relocating an entire department and taking away keys to an office that Troy no longer worked out of, even if she needed access to perform extant work functions does not rise to the level of a hostile work environment. No reasonable fact-finder could determine based on the facts presented that Troy was subject to a hostile work environment. Accordingly, Defendant's Motion for Summary Judgment for Troy's hostile work environment claim should be granted.

### 2. *Orr*

Orr claims that Lockett berated her and yelled at her, shaking a paper in her face for failing to fill positions which resulted in a $400,000 budget overrun in overtime and did not similarly yell at other male supervisors; after the HR Department had approval to hire a full time typist, Lockett did not release the candidate that Orr chose to fill the position and sent Orr candidates that were not qualified for the position; Lockett did not timely complete Orr's Employee Performance Evaluation which led to Orr being kept on probation; that she was dissuaded from filing the internal EEO complaint against Lockett; internal policies were not followed regarding the filing of her internal EEO complaint; and work was given to her staff without her permission.

Orr, like Troy, complains of the ordinary tribulations of the workplace; she has not illustrated any evidence of direct gender discrimination and any evidence of facially-neutral purported discrimination does not rise to the level of creating a hostile work environment. Viewing all of the evidence collectively in the light most favorable to her, she has not stated a claim of a hostile work environment. Accordingly, Defendant's Motion for Summary Judgment for Orr's hostile work environment claim should be granted.

### c. <u>Gender Discrimination Claim</u>

Title VII provides: "It shall be unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well established that a plaintiff must present evidence of discrimination because a "plaintiff's own belief or feeling that she was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 420 (3d Cir. 1999).

To establish a prima facie case for sexual discrimination, Plaintiffs must show that (1) they are members of a protected class; (2) they are qualified for their position; (3) they suffered an adverse employment action; and (4) that the circumstances given rise to an inference of unlawful discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Wood v. Univ. of Pittsburgh*, 395 Fed.App'x 810, 814 (3d Cir. 2010). Should Plaintiffs bear their burden of establishing a prima facie case, the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 903 (1973) is activated.

An adverse employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Additionally, the Court of Appeals for the Third Circuit has defined an adverse employment action as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citations omitted and internal quotation marks omitted).

Assuming the first two prongs are met, Plaintiffs both assert that they were subjected to an adverse employment action because they were constructively discharged. To establish a constructive discharge, Plaintiffs must show that SCI Pittsburgh "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir. 1984). This "objective test" is employed "so that an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Crooks*, 2013 WL 3894878, at *9 (quoting *Mandel*, 706 F.3d at 169 (citations omitted)). The court should consider "several factors in determining whether an employee was forced to resign, including whether she 'was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Crooks*, 2013 WL 3894878, at *9 (quoting *Mandel*, 706 F.3d at 169-70). In fact, to succeed on a claim for constructive discharge, Plaintiffs "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006). "[D]iscrimination laws 'cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998).

For example, the Court of Appeals for the Third Circuit found that where an employee's supervisor spoke to the employee in a "demeaning, condescending manner," criticized the employee in public; "overzealously" supervised the employee's work; and reduced the employee's longstanding "good" evaluation to "fair", the court found that although the criticisms of the employee were not "entirely warranted[,] . . . it is clear that unfair and unwarranted

treatment is by no means the same as constructive discharge." *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1160-162 (3d Cir. 1993).

Moreover, in *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163 (3d Cir. 2001), the Court of Appeals for the Third Circuit found that the employee's situation did not "reach the threshold of 'intolerable conditions'" necessary to be constructively discharged. 265 F.3d at 168. In *Duffy*, the employee had her duties changed, but in essence her tasks remained the same and she was not assigned menial or degrading tasks and consistently received pay increases during her employment. *Id.* The employee's department was also subject to understaffing, and management deliberately delayed providing assistance, and she was denied a promotion. *Id.* The court found that although it made the employee's job "more stressful" it did not make her job impossible or unbearable. *Id.* ("although Duffy may have subjectively believed that these circumstances were too onerous to bear, no reasonable trier of fact could conclude that . . . lack of hiring authority renders working conditions objectively intolerable.").

Even where an employee was threatened with discharge, transferred to a less desirable and less significant position, no longer provided with clerical help and his office was relocated, there was no evidence of constructive discharge because "no reasonable finder of fact asked to consider the litany of real or perceived slights suffered by [the employee] . . . could conclude that he suffered under conditions that could be objectively described as being so intolerable that he has no recourse but to quit." *Lebofsky v. City of Phila.*, 394 Fed.App'x 935, 940 (3d Cir. 2010) (not precedential).

In the instant case, because neither Troy nor Orr can show that they were subject to a hostile work environment, they cannot meet the higher burden of establishing constructive discharge and there exists no genuine issue of material fact as to whether they were

constructively discharged. In fact, neither Plaintiff offers any evidence to show that their discharge was anything but voluntary.

However, assuming *arguendo*, that Plaintiffs did meet their burden of showing a hostile work environment, they offer no evidence that they were threatened with discharge, encouraged to resign, given reduced pay or benefits. As for Troy's temporary transfer into the HR Department, she does not claim that the position was less desirable or less significant. Troy's employee performance review was still "outstanding". Lockett's additional comments not agreeing that she should have received the "outstanding" review, but rather a review of "satisfactory," did nothing to alter her terms, conditions or benefits of employment. No reasonable finder of fact could find that Troy's working conditions were so intolerable that a reasonable person would be compelled to resign. As to Orr's argument that the department was understaffed and the administration ignored staffing requests, Orr was demeaned and berated when she failed to fill positions that resulted in a $400,000 budget deficit for overtime payments, and that Lockett failed to review her probationary status may be certainly aggravating and stressful, but would not compel a reasonable person to resign. Accordingly, Defendant's motion for summary judgment as to their Title VII claim should be granted.

    d.  <u>Retaliation Claim</u>[6]

---

[6]     As an initial matter, Plaintiffs argue that "but for the severity of the retaliatory conduct, [Plaintiffs] would not have been constructively discharged from their employment." *See* Pls.'Am. Br. in Op. of Mot. for Summary Judgment [ECF No. 37] at 21. This argument misses the point and is ignorant of the fact that Troy being denied "comp time" and given greater responsibility without compensation can be considered an adverse employment action in the context of a retaliation claim because it was done within an arguably temporal proximity to the filing of her EEO complaints. It is not surprising that Plaintiffs overlooked this argument due to the complete lack of applicable case law supporting both parties' briefs. Moreover, both parties were permitted to amend their briefs to address the United States Supreme Court's ruling in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. --, --, 133 S.Ct. 2517, 2534 (2013), and added no additional legal analysis as to the retaliation claim. It is not proper for the Court to scour the record to determine whether any other circumstance constituted an actionable adverse employment action. As another court has so stated: "It is not the Court's duty to pore through hundreds of pages of evidentiary record in order to find one party's saving grace buried underneath." *Carita v. Mon Cheri Bridals, LLC*, 2012 WL 3638697, at *2 (D.N.J. Aug. 22, 2012); s*ee also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"); *Hill v. Educ. Mgmt. Corp.*, 2009 WL 3286627, at *4 (W.D.Pa. Oct. 13, 2009) ("It is not the Court's duty to provide a legal analysis for a [represented] party."). Regardless, the Court will

Title VII's anti-retaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice[,] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). This provision "seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). To establish a prima facie case for retaliation, the Plaintiffs must prove that they (1) "engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with [their] protected activity; and (3) a causal link exists between [Plaintiffs'] activity and the employer's adverse action." *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 279 (3d Cir. 2000). A plaintiff "making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer. *Nassar*, -- U.S. --, --, 133 S.Ct. at 2534. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. After Plaintiffs establish a prima facie case of retaliation, "the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the action." *Weightman v. Bank of New York Mellon Corp.*, 772 F.Supp.2d 693, 704 (W.D.Pa. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802).

A plaintiff can rely on temporal proximity between the retaliatory action and the protected activity to support causation. *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000).

---

determine whether the denial of comp time and the lack of compensation for additional responsibilities constituted retaliation.

"Even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). *See Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005) (three months illustrated sufficient temporal proximity); *but see Bush v. Donahoe*, 2013 WL 4045785, at *20 (W.D.Pa. Aug. 8, 2013) (three year period without a showing of a pattern of antagonism or retaliatory motive during the intervening period was insufficient to find causation); *Zappan v. Pa. Bd. of Probation & Parole*, 2002 WL 32174230, at *10 (E.D.Pa. Nov. 25, 2002) (two month period between protected activity and adverse employment action without more was not unusually suggestive to show causation). However, where the employee is treated the same before and after the protected activity, causation is not met. *Verma v. Univ. of Pennsylvania*, 2012 WL 1835727, at *10 (E.D.Pa. May 18, 2012) *aff'd* -- Fed.App'x --, --, 2013 WL 4010237 (3d Cir. Aug. 7, 2013) (not precedential). Likewise, where temporal proximity alone is not enough to show causation, a plaintiff "can avoid summary judgment by producing other evidence of causation, such as, for example, producing evidence of a pattern of antagonism or retaliatory motive during the intervening period, or by showing inconsistent reasons given by the employer for the adverse employment action." *Bush*, 2013 WL 4045785, at *20 (citations omitted).

### 1. Troy's Retaliation Claim

The unscheduled audit of Troy's department and making Troy complete an inventory after a piece of equipment was lost were not adverse employment actions, but were tasks to be completed in the normal course of business. Moreover, Troy testified that the audit "was in the making" before Troy filed her internal complaint. Further, Troy's employee performance review did not result in a deficient review and she was still rated as an "outstanding" employee.

Although Lockett disagreed with her rating as "outstanding," he would have rated her as a "satisfactory" employee and did not give her a deficient rating. These instances do not constitute adverse employment actions, and Defendant's Motion for Summary Judgment should be granted as to these claims.

However, as for Lockett's decision to deny Troy comp time in January 2011 and assign her additional duties without more pay, these are sufficiently adverse employment actions that occurred within five months of Troy filing her internal EEO complaint against Lockett. A genuine issue of material fact exists as to whether Lockett's decision to deny Troy comp time and his assignment of additional duties without increased pay was done in retaliation for Troy filing her EEO complaints. Therefore, the Court recommends that Defendant's Motion for Summary Judgment should be denied as to Troy's retaliation claim against Lockett for his decision to deny comp time in January 2011, and Lockett's assignment of additional duties and not compensating Troy at an increased rate.

### 2. *Orr's Retaliation Claim*

Because, as discussed *supra*, Orr has not shown a hostile work environment, nor has she shown that she was constructively discharged, she has not adduced sufficient evidence to show that she was subjected to an adverse employment action. Moreover, Orr fails to prove that failing to adhere to internal policies in responding to an internal EEO complaint is an adverse employment action. Accordingly, Orr has failed to establish a prima facie case for retaliation and Defendant's Motion for Summary Judgment as to Orr's retaliation claim should be granted.

## VI. CONCLUSION

As discussed at length above, Defendant has illustrated no genuine issue of material fact as to Plaintiff Nancy Orr's claims for a hostile work environment, gender discrimination and

retaliation claim, and Plaintiff Kathleen Troy's hostile work environment and gender discrimination claims. It is respectfully recommended that Defendant's Motion for Summary Judgment be granted as to these claims. However, a genuine issue of material fact exists as to whether it was retaliatory for Lockett to deny Troy comp time and assign her additional duties without compensation after she filed the internal EEO and federal EEO complaints. It is therefore respectfully recommended that Defendant's Motion for Summary Judgment be denied in this respect as to this claim.

**RECOMMENDATION**

For the aforementioned reasons, it is respectfully recommended that Defendant's Motion for Summary Judgment be granted as to all claims, except as to whether it was retaliatory for Superintendent Lockett to deny Plaintiff Kathleen Troy comp time and assign her additional duties without compensation.

It is therefore respectfully recommended that Defendant's Motion for Summary Judgment [ECF No. 25] be granted in part and denied in part.

Parties seeking to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal. Any party opposing written objections shall have fourteen (14) days from the date of service of the objections to respond thereto.

Dated: August 14, 2013

Respectfully submitted,
/s Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge